UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MV LOUISVILLE, LLC                                                                                      Plaintiff

v.                                                                                    Civil Action No. 3:20-cv-506-RGJ

FRANKENMUTH MUTUAL INSURANCE                                                            Defendant
COMPANY

\* \* \* \* \*

**OPINION & ORDER**

Defendant Frankenmuth Mutual Insurance Company ("Frankenmuth") moves to strike Adam Milfort as an expert witness [DE 57 ("Milfort Mot.")], strike Robert Thompson's supplemental report [DE 58 ("Thompson Mot.")], and strike Jacob Liggett as an expert witness [DE 59 ("Liggett Mot.")]. Plaintiff MV Louisville, LLC ("MV") responded to each of those motions. [DE 63 ("Milfort Resp.")]; [DE 65 ("Thompson Resp.")]; [DE 64 ("Liggett Resp.")]. Frankenmuth replied. [DE 72 ("Thompson Reply")]; [DE 73 ("Liggett Reply")]. This matter is ripe. For the reasons below, the Court **DENIES AS MOOT** Defendant's motion to strike Milfort, [DE 57], **DENIES** Defendant's motion to strike Thompson's supplemental report, [DE 58] and **DENIES** Defendant's motion to strike Liggett, [DE 59].

**I.       BACKGROUND**

Frankenmuth sold commercial property insurance to 1000 Ormsby, LLC for the property located at 990 W. Ormsby Avenue. [DE 5 ("Am. Compl.") ¶¶ 1, 5]. The policy provided insurance coverage for "direct physical loss of or damage to" buildings on the property and ran from November 1, 2017, to November 1, 2018. *Id.*; [DE 8-5 ("Policy") at Page ID 77). A July 20,

1

2018, hailstorm allegedly damaged buildings on the premises, though Ormsby did not file a claim with Frankenmuth. [DE 5 ("Am. Compl.") ¶ 11)]; [DE 65 at Page ID 1602 ("Thompson Resp.")].

In November 2019, Ormsby sold the insured property to MV, and as part of that transaction Ormsby allegedly assigned all interests, benefits, rights, and control of insurance claims associated with the insured premises to MV. [DE 5 ("Am. Compl.") ¶ 14)]. MV subsequently reported the hail damage to Frankenmuth and filed a claim for the damages. *Id.* ¶ 16. According to MV, Frankenmuth "failed to fully and properly pay [this] valid claim for insurance proceeds," so it initiated this lawsuit against Frankenmuth. *Id.* ¶ 21.

On January 6, 2021, Frankenmuth moved for summary judgment asserting that Ormsby's assignment was improperly executed and therefore ineffective. [DE 18 ("MSJ")]. The Court denied that motion. [DE 42 ("SJ Order")]. The parties proceeded with discovery and other pretrial deadlines. Pursuant to the scheduling order, MV was required to disclose its experts by April 9, 2021. [DE 17 ("Scheduling Order")]. Frankenmuth was required to disclose its experts by July 24, 2021. [DE 27 ("Supp. Scheduling Order")]. Both parties needed to make any supplemental disclosures no later than September 9, 2021. *Id.* Both MV's and Frankenmuth's initial expert disclosures were timely. On September 9, 2021, MV made its supplemental disclosures. [DE 58-1 ("Thompson Suppl. Report")].

Frankenmuth challenges three of MV's supplemental disclosures. First, Frankenmuth moves to strike Adam Milfort on the grounds that Milfort was not listed in MV's initial disclosures. [DE 57 ("Milfort Mot.")]. Second, Frankenmuth moves to strike the supplemental report submitted by Robert "Mike" Thompson, arguing that Thompson's report is not really "supplemental" and should have been part of MV's initial disclosures. [DE 58 ("Thompson

Mot.")]. Third, Frankenmuth moves to strike Jacob Liggett because the details in his supplemental disclosure belonged in his initial disclosure. [DE 59 ("Liggett Mot.")].

## II. MOTION TO STRIKE ADAM MILFORT AS AN EXPERT WITNESS

Pursuant to the Court's scheduling order, MV made its initial expert disclosures on April 9, 2021. [DE 58-2 ("Pl.'s Initial Expert Disclosures")]. Adam Milfort was not one of those experts listed. *Id.* Yet, on September 9, 2021, MV disclosed, for the first time, that Milfort was one of its experts. [DE 58-4 ("Pl.'s Suppl. Expert Disclosures")]. Frankenmuth now moves to strike Milfort asserting that his disclosure was untimely. [DE 57 ("Milfort Mot.")]. MV does not challenge Frankenmuth's motion. In response, MV "withdraws its designation of Milfort as an expert witness, so long as it [is] clear that Milfort may testify as a fact witness." [DE 63 at Page ID 1560 ("Milfort Resp.")]. MV states that Milfort has "personal knowledge" of the "claim at issue" from interactions like "attend[ing] an inspection of the loss location by Frankenmuth and its experts." *Id.* MV therefore asks the Court to deny Frankenmuth's motion as moot. *Id.* Frankenmuth did not reply to MV's response.

As a result, with MV withdrawing Milfort as an expert witness and Frankenmuth not challenging Milfort's status as a fact witness, the Court denies as moot Frankenmuth's motion to strike Milfort.

## III. MOTION TO STRIKE ROBERT THOMPSON'S SUPPLEMENTAL REPORT

Federal Rule of Civil Procedure 26(a)(2) requires that parties disclose the identity of any expert witness they intend to use at trial. Because new information can be acquired after parties make their initial expert disclosures, Rule 26(e) permits parties to supplement those disclosures. Supplemental disclosures must be made "in a timely manner" if a party learns that its initial disclosure "is incomplete or incorrect, and if the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The only other way for a party to supplement its initial disclosure is by court order. Fed. R. Civ. P. 26(e)(1)(B).

Supplementation is therefore limited to "correcting inaccuracies" or "filling interstices" in an initial disclosure. *Bentley v. Highlands Hosp. Corp.*, No. cv 15-97, 2016 WL 5867496, at *4 (E.D. Ky. Oct. 6, 2016) (quoting *Munchkin, Inc. v. Playtext Prods., LLC*, 600 Fed. Appx. 537, 538 (9th Cir. 2015)). Parties may fill gaps in initial reports "when they later learn of the missing information." *Id.* (citations omitted). But parties cannot "add new analyses, opinions, or theories under the guise of supplementation." *Id.* (citations omitted).

Robert "Mike" Thompson is a District Engineering Principal working at EFI Global. [DE 58-2 at Page ID 845 ("Pl.'s Exert Disclosures")]. MV timely identified Thompson on April 9 as an expert who was expected to testify about "the existence of hail damage, when it occurred, the scope and extent of the damage caused by hail, and the necessary repairs required to remedy the damage." *Id.* at Page ID 846. MV subsequently disclosed a supplemental report by Thompson on September 9. [DE 58-1 ("Thompson Suppl. Report")]. A true supplemental opinion would have been timely on that date. [DE 27 ("Supp. Scheduling Order")]. But Frankenmuth moves to strike Thompson's supplemental report because it was not supplemental and should instead be construed as an initial disclosure, meaning that this "supplemental report" was untimely. [DE 58 ("Thompson Mot.")].

Frankenmuth asserts that Thompson's initial disclosure pertained only to whether "the Insured Premises suffered hail related damage and the extent of that damage," but the supplemental report is all about "when the hail damage occurred." [DE 58 at Page ID 759–60 (emphasis omitted) ("Thompson Mot.")]. These two inquiries, Frankenmuth claims, are different enough that the latter

is not a supplement. Frankenmuth further hypothesizes that Thompson supplemented his initial report because one of the defendant's experts, Luis Ulloa, claimed that multiple hailstorms damaged the insured property over the last twenty years and the majority of the hail damage occurred before July 20, 2018. *See id.* at 760. Faced with Ulloa's damning conclusions, Frankenmuth believes that MV scrambled at the eleventh hour to "supplement" Thompson's initial report rather than seek leave to amend the scheduling order or ask the Court to file Thompson's second report after the time for initial disclosures had passed. *See id.* at 761.

MV responds that Thompson's initial report was about the extent of hail damage at the insured premises *and when that damage occurred*. [DE 65 at Page ID 1604 ("Thompson Resp.")]. As a result, MV asserts that Thompson's supplemental report discussing when the damage occurred (and implicitly dismissing Ulloa's theory that the damage occurred before July 18, 2018) really does supplement the first report. *See id.*

Thompson's first report, titled a "Roof Distress Assessment," described the scope of Thompson's assignment as determining "if the roofs on the buildings at the loss location had been damaged by hail." [DE 58-1 at Page ID 778 ("Thompson Initial Report")]. The cover page of the report specified that the date of loss was "July 20, 2018," and the report later stated that "hail fell on [July] 20, 2018, the date of the loss."[1] *Id.* at Page ID 777, 781. The report concluded that "a hail event occurred at the loss location that caused damage to the roof surfaces" and the roofs "should be replaced due to hail damage." *Id.* at Page ID 781–82. Attached to Thompson's initial

---

[1] Thompson wrote that "hail fell on June 20, 2018, the date of the loss." [DE 58-1 at Page ID 781 ("Thompson Initial Report")]. MV asserts that this was a typographical error and that Thompson meant to write July 20, 2018. [DE 65 at Page ID 1600 ("Thompson Resp.")]. Frankenmuth accepts this reasonable explanation. The Court will as well.

5

report is a Corelogic Hail Verification Report, which shows that hail fell on the insured property on July 20, 2018, and six other dates outside the policy period. *See id.* at Page ID 834–35.

MV's disclosure of Thompson provides helpful context for this initial report. There, MV states that Thompson is expected to testify as to the existence and extent of hail damage and "when [that damage] occurred." [DE 58-2 at Page ID 846 ("Pl.'s Initial Expert Disclosures")]. The disclosure also notes that Thompson inspected the insured premises "in connection with a July 20, 2018 hail storm (the "Loss")." *Id.* at 845.

The second report—similarly titled "Roof Distress Assessment Supplement"—explained that the purpose of this "follow-up investigation" into the insured premises was to "determine if the roofs … had been damaged on … July 20, 2018, the original issued date of loss, or some other date." [DE 58-1 at Page ID 853 ("Thompson Suppl. Report")]. That report then identifies eighteen dates when hail of 0.75" or greater fell near the insured premises, explains why those seventeen other dates probably did not cause this damage to the insured premises, and concluded that "hail caused damage to the roof surfaces at the loss location on July 20, 2018." *Id.* at Page ID 860. In its supplemental expert disclosure, MV stated that Thompson is expected to testify in accordance with "observations and opinions contained in both his original report (previously produced) and his supplemental report," namely, the extent and existence of hail damage and "when [that damage] occurred." [DE 58-4 at Page ID 888–89 ("Pl.'s Suppl. Expert Disclosures")].

The language of Thompson's two reports and the accompanying disclosures indicates that the second disclosure was proper supplementation under Rule 26(e). Although the initial report and disclosure dealt largely with the extent of the damage, they both discuss when the damage occurred. Thompson opines in his second report that "hail fell on [July] 20, 2018, the date of the loss." [DE 58-1 at Page ID 781 ("Thompson Initial Report")]. The cover page says so too. *Id.* at

Page ID 777. And the initial disclosure specified that Thompson would testify about "when [the damage] occurred." [DE 58-2 at Page ID 846 ("Pl.'s Initial Expert Disclosures")]. Frankenmuth's motion focuses on other parts of Thompson's initial report, specifically those sections that do not deal with the date of the damage. [DE 58 ("Thompson Mot.")]. When looking at Thompson's initial report and disclosure in their entirety, the language makes clear MV informed Frankenmuth that Thompson would testify that the July 20, 2018, hailstorm caused damage to the insured premises.

Frankenmuth, in reply, slightly tweaks its argument. No longer claiming that Thompson's initial report did not pertain at all to the date of the damage, Frankenmuth instead argues that "[no] single sentence of Thompson's initial report … offers the opinion the hail damage found occurred solely as a result of the July 20, 2018 hail event." [DE 72 at Page ID 1688 ("Thompson Reply")]. But that's different than alleging Thompson impermissibly "add[ed] new analyses, opinions, or theories." *Bentley*, 2016 WL 5867496, at *4. As with Thompson's first report, his second report opines that a July 20, 2018, hailstorm damaged the insured premises.

Frankenmuth relies heavily on *Bentley v. Highlands Hosp. Corp.* in arguing that Thompson's second report is not supplemental. [DE 58 ("Thompson Mot.")]; [DE 72 ("Thompson Reply")]. In *Bentley*, the court found that a medical expert's second report was not supplemental, even though it was styled as such. *See* 2016 WL 5867496, at *6. There, the expert opined in his original report that the defendant, a medical center, created perverse incentives for its doctors at the expense of accuracy. *See id.* But that expert's supplemental report went much further by arguing that the defendant failed to subject its doctors' work to adequate peer review. *See id.* The court explained that "the concept of 'peer review' appears *nowhere* in [the] initial report" and concluded that the second report was merely "an attempt to slip in a new theory of liability under

the guise of supplementation." *Id.* (emphasis added). The court struck the second report because "distinct theories of liability" resting on "distinct fact patterns and judgments" are not supplemental under Rule 26(e).

Here, unlike the initial report in *Bentley*, Thompson's initial report mentions multiple times that the loss occurred on July 20, 2018. [DE 58-1 ("Thompson Initial Report")]. And Thompson's second report does not try to slip in any new theories of liability; it's all about the same theory of liability found in the initial report. [DE 58-1 ("Thompson Suppl. Report")].

Frankenmuth also cites to *Eiben v. Gorilla Ladder Co.*, No. 11-cv-10298, 2013 WL 1721677, at *2 (E.D. Mich. Apr. 22, 2013) for support. [DE 72 at Page ID 1690–91 ("Thompson Reply")]. There, the plaintiff sued a ladder manufacturer for negligent design and negligent failure to warn. *See id.* at *2. The defendant asked the court to strike a plaintiff expert's affidavit alleging that it was improper supplementation. *See id.* The court observed that the original report made "no mention whatsoever" of the expert's qualifications, noting only on its cover page that he was a "mechanical engineering consultant." *Id.* at *5. The affidavit, however, provided for the first time specific examples of alternative latter designs and the expert's qualifications on ladder design and ladder safety warnings. *See id.* As a result, the court struck the affidavit because it was an attempt to "transform a conclusory report via supplementation." *Id.* at *6.

Frankenmuth argues that, like *Eiben*, the cover page notation on Thompson's initial report should not be enough to make the second report supplemental. [DE 72 at Page ID 1690 ("Thompson Reply")]. But, unlike the initial report in *Eiben*, Thompson's report and disclosure both reference the date of loss in more places than just the cover page. Plus, Thompson's initial report was neither conclusory nor wholly lacking in substance. *Eiben* is not on point.

This is not a case where a party disregarded an initial duty to disclose and sought to "evade the resulting consequences by asserting supplementation of reasoning that was never there to begin with." *Ullman v. Auto-Owners Mut. Ins. Co.*, No. 2:05-cv-1000, 2007 WL 1057397, at *5 (S.D. Ohio Apr. 5, 2007). Nor is it an instance of "seeking to transform a conclusory report and its unexplained opinion via supplementation" or "'lying in wait' to express new opinions at the last minute." *Id.* (quoting *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)).

After considering the substance of both reports, MV's expert disclosures, and relevant caselaw, the Court finds that Thompson's second report is supplemental. The second report is not a brand-new opinion or theory of liability, rather, it fills in a gap left by the first report. And the fact that MV disclosed this report one hour before the deadline doesn't make it untimely or merit exclusion, just the opposite in fact. It shows that MV complied with the Court's scheduling order. And importantly, Frankenmuth cannot claim suprise as Thompson's initial report and disclosures did say that part of his testimony would be about when the loss occurred.

Frankenmuth also argues that Thompson's second report is not a rebuttal expert opinion (a Rule 26(a)(2)(D)(ii) argument) and that introducing this report would not be harmless (a Rule 37(c) argument). The Court need not address those arguments because it has determined that Thompson's report was in fact a timely supplemental report. [2]

For these reasons, the Court denies Frankenmuth's motion to strike Thompson's supplemental report.

---

[2] Even if Thompson's second report is not treated as a supplement, the Court would not exclude the report under Rule 37(c) because the violation is ultimately harmless. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271–72 (6th Cir. 2010) ("Rule 37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'"). Important to this analysis is the surprise to Frankenmuth and its ability to cure that surprise. *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). There is little surprise here because the first report made clear that the date of loss was in fact July 20, 2018. And on top of that, whatever surprise this report created can be cured by Frankenmuth deposing Thompson.

## IV. MOTION TO STRIKE JACOB LIGGETT AS AN EXPERT WITNESS

MV's April 9, 2021, initial disclosure provided the following information about its proposed expert witness Jacob Liggett:

> HailSolve is a risk management and construction management firm and is a licensed general contracting company in several states, including Kentucky. Jacob Liggett is the Director of Claims. HailSolve was engaged by Plaintiff as its general contractor to inspect the roof of the Insured Premises. Prior to and after the filing of this lawsuit, Mr. Liggett inspected the subject buildings, identified storm caused damage, and scoped the damages. Mr. Liggett has factual and expert knowledge relating to this case, including the storm-caused damage to the Insured Premises and may offer testimony regarding same based on his knowledge, training, and experience. Based on his inspections and evaluations of the Insured Premises and his investigation as a whole, Mr. Liggett is expected to testify to the cause of the damage, as well as the fair, reasonable, and competitive replacement cost value of the necessary repairs to the Insured Premises. He is expected to testify to the scope and amount of loss, the method of the necessary repairs, and as to the reasonable and necessary to accomplish the required work. He may also opine concerning any estimate produced by Defendant's adjusters or experts.
>
> His hourly rate for deposition testimony associated with this litigation is $225 per hour. As he was not specifically retained or employed to provide expert testimony in this case, Mr. Liggett is disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

[DE 58-2 at Page ID 848–49 ("Pl.'s Initial Expert Disclosures")]. No report accompanied that disclosure. *See id.* Discovery continued, and on August 7, 2021, Frankenmuth sent a letter to MV's counsel questioning whether Liggett's initial disclosure complied with Federal Rule of Civil Procedure 26. [DE 64-1 ("Letter")]. In order "to avoid a discovery dispute," MV provided a supplemental disclosure and report for Liggett. [DE 64 at Page ID 1567 ("Liggett Resp.")]. That disclosure provided more detail, stating that that Mr. Liggett was expected to testify about:

> 1) the storm on or about July 20, 2018 caused hail damage to the Insured Premises, 2) the extent of the storm-caused damage, 3) the method of the necessary repairs, 4) that the repair costs in the estimate prepared by HailSolve are fair and reasonable, and are the competitive replacement cost value of the necessary repairs to the Insured Premises, and 5) that the actual cash value as stated in HailSolve's estimate accurately represents the applicable depreciation.

10

[DE 58-4 ("Pl.'s Suppl. Expert Disclosures")]. The supplemental report delved into those specifics. [DE 59-4 ("Liggett Suppl. Report")].

The first question presented by Frankenmuth's motion is whether MV's disclosure of Liggett complies with Federal Rule of Evidence 26(a)(2)(C).[3] Rule 26(a)(2)(C) establishes the disclosure requirements for expert witnesses who are not required to provide a written report. Under Rule 26(a)(2)(C), a disclosure must report the "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Rule 26(a)(2)(C) was "added to mandate summary disclosures of the opinions … and of the facts supporting those opinions." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment. This Rule cautions courts against requiring "undue detail." *Id.*; *see also Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 2:09-cv-1081, 2015 WL 1105840, at *6 (S.D. Ohio Mar. 11,

---

[3] Rule 26(a)(2) governs the disclosure of expert testimony. Experts and their expert testimony can fall under one of two subsections of Rule 26(a)(2)—Subsection B governs experts retained or employed specially to provide testimony and Subsection C governs experts that are not. Experts falling within Subsection B are subject to more extensive disclosure requirements, that is, they must provide a written report to accompany their initial disclosure. Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment.

MV maintains that Liggett is a Rule 26(a)(2)(C) witness and is therefore subject to less extensive disclosure requirements. [DE 64 at Page ID 1569 ("Liggett Resp.")]. Frankenmuth contends that Liggett is a Rule 26(a)(2)(B) witness subject to more extensive disclosure requirements. [DE 59 at Page ID 1008 ("Liggett Mot.")]. However, Frankenmuth also argues in its motion that Liggett's supplemental report does not satisfy the requirements of Subsection C. *Id.* at Page ID 1006. In its reply, Frankenmuth focuses on how Liggett failed to satisfy Subsection C. [DE 73 ("Liggett Reply")]. There, Frankenmuth asserts that Liggett's "categorization" as a Subsection B or Subsection C witness "makes little difference to the outcome of this motion" because his disclosure fails to satisfy either standard. *Id.* at Page ID 1769. It would make little difference because failure comply with either subsection triggers the same Rule 37 analysis. Fed. R. Civ. P. 37(c)(1).

Because both parties ask the Court to conduct a Rule 26(a)(2)(C) analysis, and because the Court agrees with Frankenmuth that doing so would not change the outcome of this issue, *see infra*, the Court starts its analysis with Rule 26(a)(2)(C).

2015) ("Rule 26(a)(2)(C) disclosures must state nothing more than the 'subject matter' and 'a summary of the facts and opinions to which the witness is expected to testify,' and … such summaries of facts and opinions do not require 'undue detail.' ").

Relying on *Chesney v. Tennessee Valley Auth.* and *Saline River Properties, LLC v. Johnson Controls, Inc.*, MV argues that Liggett's first disclosure complied with Rule 26(a)(2)(C). [DE 64 at Page ID 1571–75 ("Liggett Resp.")]. Those cases held that a "simple statement of who was going to testify as to what [is] sufficient" to meet Rule 26(a)(2)(C).[4] *Saline River Properties*, No. CIV.A. 10-10507, 2011 WL 6031943, at *7 (E.D. Mich. Dec. 5, 2011) (citing *Chesney*, Nos. 3:09–cv–09, 3:09–cv–48, 3:09–cv–54, 3:09–cv–64, 2011 WL 2550721 (E.D. Tenn. June 21, 2011). For MV, Liggett's initial disclosure is acceptable because it satisfies that standard—the disclosure says who will testify (Liggett) and about what (the cause of the hail damage and the value of necessary repairs). [DE 58-2 at Page ID 848–49 ("Pl.'s Initial Expert Disclosures")].

---

[4] One of the initial disclosures at issue in *Chesney* stated:

> David L. Bowling, Jr., Manager of TVA's River Forecast Center, 400 West Summit Hill Drive, Knoxville, Tennessee 37902. In accordance with Rule 26(a)(2)(C), TVA states that Mr. Bowling may be called to testify about water flows and elevations in the Emory, Clinch, and Tennessee River portions of the Watts Bar Reservoir at various locations and times.

*Chesney*, 2011 WL 2550721, at *3 n.3. The *Chesney* court found that this disclosure satisfied Rule 26(a)(2)(C) and denied the motion to exclude the witness. *See id.*

Similarly, the initial disclosure at issue in *Saline* listed the proposed experts' names and then informed the other party:

> Subjects: Environmental testing of the subject site and historical data regarding site. They have not been specially engaged for the litigation. The reports, findings and data have, upon information and belief, been provided to [JCI.] A copy of their respective curriculum vitas [sic] are attached hereto.

*Saline River Properties*, 2011 WL 6031943, at *5. The *Saline River Properties* court determined that this disclosure complied with Rule 26(a)(2)(C) but ordered a supplemental disclosure providing opposing counsel with some clarification about the topics for each witnesses' testimony. *See id.* at *9–10.

True, Liggett's disclosure satisfies that lenient Rule 26(a)(2)(C) standard in *Chesney* and *Saline River Properties*. But as Frankenmuth points out, the problem for MV is that district courts in this circuit have declined to follow either of those cases, asking more of parties in their (a)(2)(C) initial disclosures. *See, e.g.*, *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 2:09-cv-1081, 2015 WL 1105840 (S.D. Ohio Mar. 11, 2015); *Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co., LLC*, No. 13-14909, 2015 WL 6865931 (E.D. Mich. Nov. 9, 2015); *Montana Connection, Inc. v. Moore*, No. 3:12-cv-0824, 2015 WL 9307283 (M.D. Tenn. Dec. 21, 2015); *Degener v. Sephora USA, Inc.*, No. 3:14-cv-586, 2016 WL 11750587 (W.D. Ky. June 13, 2016). The reason for rejecting *Chesney* and *Saline River Properties* is twofold. First, those cases' reading of Rule 26(a)(2)(C) "would render both prongs of the [Subsection C] requirement meaningless, especially considering the existing requirements of Rule 26(a)(1)(i). *Little Hocking*, 2015 WL 1105840, at *8. Indeed, Rule 26(a)(1)(i) already requires parties to provide the name and contact information of individuals likely to have discoverable information, "along with the subjects of that information." Second, while the Advisory Committee Notes to Rule 26(a)(2)(C) state that courts "must take care against requiring undue detail," that does not free parties of providing any detail whatsoever. *See Little Hocking*, 2015 WL 1105840, at *8. An initial disclosure still must contain a "summary of facts and opinions." Fed. R. Civ. P. 26(a)(2)(C).

Thus, more is required of MV's initial expert disclosures than just providing a simple statement of who will testify and what they will say. An initial disclosure that complies with Rule 26(a)(2)(C) must set out "a brief account of the main opinions of the expert, and [] the opinions must state a view or judgment regarding a matter that affects the outcome of the case. A mere statement of the topics of the opinions is insufficient." *Little Hocking*, 2015 WL 1105840, at *9. Also necessary is "a brief account of facts—only those on which the expert actually relied in

forming his or her opinions—that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice." *Id.*

Liggett's initial disclosure does not meet this standard—it merely identifies the topics about which Liggett will provide opinions at trial and similarly states the topics of facts on which Liggett will testify. [DE 58-2 at Page ID 848–49 ("Pl.'s Initial Expert Disclosures")]; *see also Little Hocking*, 2015 WL 1105840, at *2 n.1 (finding disclosures with a similar amount of detail did not satisfy Rule 26(a)(2)(C)). MV provided none of Liggett's actual opinions in its disclosure, nor does it mention, even briefly, the facts on which Liggett relied in forming his opinions. *Id.* That is not enough to satisfy Rule 26(a)(2)(C). *See Little Hocking*, 2015 WL 1105840, at *9.

Thus, the second question presented by Frankenmuth's motion is whether MV's failure to follow Rule 26(a)(2)(C)'s disclosure requirements should result in exclusion under Rule 37(c).

Fed. R. Civ. P. 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the order listed in Rule 37 (b)(2)(A)(i)-(vi)." "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was substantially justified or harmless." *Dickenson v. Cardian & Thoracic Surgery of E. Tenn. P.C.*, 388 F.3d 976, 983 (6th Cir. 2004).

To determine whether a failure to provide information under FRCP 37 is substantially justified and harmless, the Court looks to five factors set forth in *Howe v. City of Akron*, 801 F.3d

14

718, 748 (6th Cir. 2015). The five factors are: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. Plaintiff bears the burden of showing whether the failures were substantially justified. *Silitonga v. Kentucky State Univ.*, 2018 WL 3969951, at *2 (E.D. Ky. Aug. 20, 2018).

Under *Howe*, the Court first looks to the surprise to Frankenmuth. MV asserts that there is little surprise here because Liggett was so involved with this lawsuit that Frankenmuth must have been aware of what his testimony would be. [DE 64 at Page ID 1575–76 ("Liggett Resp.")]. Although "the rules do not require parties to read minds," *Bentley*, 2016 WL 5867496, at *10, Frankenmuth did not have to read anybody's mind to figure out Liggett's opinions and the facts on which he relied in forming those opinions. Liggett inspected the premises on June 9, 2020. [DE 59-4 at Page ID 1074 ("Liggett Suppl. Report")]. One of Frankenmuth's experts attended that inspection. *Id.* Liggett concluded from his inspection that "hail damage occurred on July 20, 2018 at the location." *Id.* at Page ID 1075. Liggett informed Frankenmuth and its expert of his opinion, which, critically, is the same opinion found in his second report. *Id.* at Page ID 1074–75. In reality, Frankenmuth knew ten months before Liggett's initial disclosure (and fifteen months before the supplemental disclosure) what his opinions were. *Id.* That, coupled with MV's initial disclosure itself, means that Frankenmuth was not left to "guess what expert testimony was coming." *Bentley*, 2016 WL 5867496, at *10 (citing *McFerrin v. Allstate Prop. & Cas. Co.*, 29 F. Supp. 3d 924, 932 & n.5 (E.D. Ky. 2014)). This factor therefore favors MV.

The second factor—the ability to the cure the surprise—also cuts in MV's favor. MV argues that "any surprise has been cured," or, rather, can be cured, because Liggett has yet to be

15

deposed. [DE 64 at Page ID 1576 ("Liggett Resp.")]. In reply Frankenmuth claims that the reason Frankenmuth has not been deposed is because of MV's untimely disclosure. [DE 73 at Page ID 1766 ("Liggett Reply")]. Frankenmuth was scheduled to depose Liggett on September 15, 2021. [DE 59 at Page ID 1023 ("Liggett Mot.")]. Frankenmuth received a supplement almost a week before that date. [DE 58-4 ("Pl.'s Suppl. Expert Disclosures")]. Frankenmuth received MV's initial disclosure five months before and first learned of Liggett's opinion ten months before that. [DE 59-4 at Page ID 1074–75 ("Liggett Suppl. Report")]. This dispute can be cured by deposing Liggett without reopening discovery. See [DE 56 ("Mot. to Compel")] (pending discovery motion); *cf. Silitonga v. Kentucky State Univ.*, No. 3:16-cv-29, 2018 WL 3969951, at *3 (E.D. Ky. Aug. 20, 2018) (reopening discovery cannot cure every surprise).

Third, the Court looks to the extent to which allowing the evidence would disrupt the trial. Discovery deadlines and a trial date were set before this supplemental disclosure. This trial was originally scheduled to begin on March 7, 2022. [DE 17 at Page ID 263 ("Scheduling Order")]. The trial has been continued to November 7, 2022, though there is currently another pending motion asking the Court to extend the discovery deadline and a motion to push the trial back yet again. [DE 75 ("Mot. to Extend Discovery"), DE 76 ("Mot. to Remand Trial")]. There may be sufficient time to extend the discovery deadline for the limited purpose of an additional deposition without affecting the trial date. This factor supports MV.

For the fourth factor, the Court looks to the importance of the evidence. MV offers little analysis here, stating only that "Liggett's testimony is obviously important evidence." [DE 64 at Page ID 1578 ("Liggett Resp.")]. But Frankenmuth seems to agree that this evidence is important, [DE 73 at Page ID 1768 ("Liggett Reply")], and the Court does too. This can cut both ways. "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy

16

disclosure." *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-cv-150, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017) (cataloguing and comparing cases). However, courts tend to find that the more important the evidence, the more this factor favors the party disclosing the witness. *See, e.g.*, *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019) ("highly important" evidence); *Bentley*, 2016 WL 5867496, at *11 ("marginally important," "important," and "significant" evidence); *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2022 WL 279857, at *10 (N.D. Ohio Jan. 31, 2022) ("highly important" evidence). This factor therefore weighs in favor of MV.

Lastly, the Court looks to Plaintiff's explanation for its failure to disclose the evidence. MV asserts that this factor is "irrelevant" because "[it] properly disclosed Liggett." [DE 64 at Page ID 1578 ("Liggett Resp.")]. MV fails to explain its untimely disclosure, making it difficult for the Court to determine that this failure was an honest mistake. *See Bentley*, 2016 WL 5867496, at *11 ("[A]bsent some 'substantial justification' for the delay, the Court simply cannot say that [Plaintiff's] repeated failures to comply with Rule 26 were honest mistakes.") (quoting *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003)). This factor cuts in favor of Frankenmuth.

On balance, the Court finds that MV's failure to follow Rule 26(a)(2)(C)'s disclosure requirements was harmless. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019) ("[J]udges need not apply Howe's factors rigidly.") (quotation omitted). For these reasons, the Court denies Frankenmuth's motion to strike Liggett.

## V. CONCLUSION

For all these reasons, and being otherwise sufficiently advised, it is **ORDERED** that Defendant's motion to strike Milfort, [DE 57], is **DENIED AS MOOT**, Defendant's motion to

strike Thompson's supplemental report, [DE 58] is **DENIED**, Defendant's motion to strike Liggett, [DE 59], is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

August 15, 2022