UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:20-CV-00506-RGJ-CHL

**MV LOUISVILLE, LLC,**                                                                                     **Plaintiff,**

v.

**FRANKENMUTH MUTUAL INSURANCE COMPANY,**                    **Defendant.**

### MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Compel Deposition of Amanda Moore-Roberson, P.E., and Production of Related Documents of Plaintiff MV Louisville, LLC ("MV Louisville"). (DN 56.) Defendant Frankenmuth Mutual Insurance Company ("Frankenmuth") filed a response in which it requested that the Court quash the subpoena served by MV Louisville related to its motion, which the Court construes as a Counter-Motion to Quash. (DN 62.) MV Louisville filed a reply in support. (DN 71.) The Parties' Joint Motion to Place Deadlines in Abeyance (DN 75) and Frankenmuth's Motion to Remand Jury Trial Date (DN 76) are also pending before the Court. These matters are ripe for review.

For the reasons set forth below, MV Louisville's Motion to Compel (DN 56) and Frankenmuth's Counter-Motion to Quash (DN 62) are both **GRANTED IN PART** and **DENIED IN PART**. The Parties' Joint Motion to Place Deadlines in Abeyance (DN 75) is **DENIED** as moot given that the instant memorandum opinion and order addresses all pending motions, and Frankenmuth's Motion to Remand Jury Trial Date (DN 76) is **GRANTED**. The Court will direct the Parties to submit a joint proposed amended scheduling order as set forth below.

**I.     BACKGROUND**

On July 17, 2020, MV Louisville filed a Complaint against Frankenmuth for breach of an insurance contract between Frankenmuth and its insured 1000 Ormsby, LLC ("Ormsby") related to alleged hail damage to property at 990 W. Ormsby Avenue, Louisville, Kentucky (the "Subject Property").[1] (DN 1; DN 56-1, at PageID # 502.)[2] MV Louisville had purchased the Subject Properties from Ormsby in November 2019. (DN 1, at ¶ 14.) As part of the purchase process, Ormsby assigned its "interests, benefits, rights, and control of insurance claims associated with the" Subject Property to MV Louisville (the "Assignment").[3] (*Id.*) MV Louisville alleged that the roof of the Subject Property was damaged during a hail storm on July 20, 2018. (*Id.* at ¶ 11.) MV Louisville reported that damage to Frankenmuth and made a claim for coverage, but Frankenmuth has not yet paid the claim. (*Id.* at ¶¶ 16, 22.) In its answer in the instant litigation, Frankenmuth asserted a number of defenses including that MV Louisville "failed to provide prompt or reasonable notice of the asserted property damage claim." (DN 8, at PageID # 39 (eighth defense).) Frankenmuth also filed a counterclaim for declaratory judgment requesting a judgment from the Court that "it has no duty [to] indemnify MV Louisville for the claims [it] asserted"; "the purported assignment from 1000 Ormsby, LLC to MV is not a valid assignment under the contractual language of the Policy and/or controlling law"; "the delayed notice of loss has so prejudiced Frankenmuth that Frankenmuth's duty to indemnify, if any, is eliminated"; "the alleged hail

---

[1] While MV Louisville actually purchased properties at 990-1001 W. Ormsby Avenue and 901-907 W. Magnolia Avenue, Louisville, Kentucky, from Ormsby, it concedes that Frankenmuth's insurance policy "only covered the structures" at 990 W. Ormsby Avenue. (DN 56-1, at PageID # 503 n.1.)
[2] While MV Louisville filed an Amended Complaint on July 22, 2020, the only change between the two documents was in the paragraph establishing the citizenship of MV Louisville. (*Compare* DN 1, *with* DN 5.) Accordingly, the undersigned will cite only to the original complaint (DN 1) herein.
[3] Frankenmuth challenged the Assignment via a motion for summary judgment. (DN 18.) The Court ruled that the Assignment "only assigned *claims* from the Policy arising out of purported hail damage and is still permissible under the public policy considerations" in applicable case law; the Court found that Frankenmuth's other arguments involved issues of material fact. (DN 42, at PageID # 442-43.) Accordingly, Frankenmuth's motion was denied. (*Id.* at 443.)

2

damage did not commence during the policy period and/or that the alleged hail damage did not occur to a covered building on the Policy"; "the lack of maintenance and building condition contributed to and/or was the reason the alleged hail caused damage to a covered building on the Policy"; and/or that "MV Louisville failed to mitigate its damages." (*Id.* at PageID # 52, ¶¶ 44-49.)

Relevant to the instant motions, on June 9 and June 15, 2020, Marlene Butts ("Butts"), Frankenmuth's adjuster; Jacob Liggett, MV Louisville's contractor ("Liggett"); and Amanda Moore-Roberson ("Moore-Roberson"), an engineer retained by Frankenmuth, inspected the roof of the Subject Property. (DN 56-1, at PageID # 503; DN 56-2, at PageID # 520.) MV Louisville claims that Moore-Roberson told Liggett during this inspection that "this [hail splatter] is obviously not from 2012 or 2015." (DN 56-1, at PageID # 503-04; DN 56-2, at PageID # 521.) MV Louisville emphasized that Moore-Roberson was the first person associated with Frankenmuth to actually inspect the roof at issue and that Frankenmuth next inspected the roof on June 24, 2021. (DN 56-1, at PageID # 504.) Despite Moore-Roberson's inspection, when it made its expert disclosures, Frankenmuth did not disclose Moore-Roberson as an expert witness. (DN 38.)

Frankenmuth emphasized in its response and counter-motion that MV Louisville provided notice of the loss on May 11, 2020. (DN 62, at PageID # 1367; DN 62-5.) Its adjuster, Butts, received the notice on May 12, 2020, and immediately retained coverage counsel due to "the unusual nature of an assignment prior to notice of a claim, and the fact that—while there was hail in the Louisville area on the date claimed—there were at least four other hail events, with hail approximately on inch in diameter or more, between 2012 and 2018." (DN 62, at PageID # 1367-68; DN 62-7, at PageID # 1464, 1483; DN 62-12, at ¶¶ 3-4.) Butts informed MV Louisville's

counsel, with whom she had been told to communicate instead of MV Louisville directly, that Frankenmuth would not inspect the property until after counsel drafted a reservation of rights letter. (DN 62, at PageID # 1369; DN 62-8, at PageID # 1489-90.)

On June 5, 2020, Frankenmuth tendered a reservation of rights letter to MV Louisville's counsel. (DN 62, at PageID # 1369; DN 62-9.) The letter acknowledged the existence of MV Louisville's claim but stated that "[a]t the current time, Frankenmuth Insurance does not have sufficient information to determine if the reported loss or event is deemed eligible under the terms of the insurance policy." (DN 62-9.) The letter indicated that Frankenmuth was going to research the claimed event and that Frankenmuth reserved its rights including "the right to refuse to indemnify MV Louisville if the claim is deemed ineligible." (*Id.*) It identified the basis for this reservation as questions about whether the storm event occurred during the policy period, prejudice to Frankenmuth due to the late reporting, and the claim having been made by a party not in privity of contract with Frankenmuth. (*Id.*) That same day—June 5, 2020—Butts first retained and spoke with Moore-Roberson. (DN 62, at PageID # 1375; DN 62-12, at ¶ 15.) It was only after issuing the reservation of rights letter that Butts and Moore-Roberson visited and Moore-Roberson inspected the property. (DN 62, at PageID # 1369.) MV Louisville ultimately filed suit on July 17, 2020. (DN 1.)

After suit was filed, Frankenmuth retained its current counsel and drafted a supplemental reservation of rights letter that expanded the grounds listed in its original letter. (DN 62, at PageID # 1370-71; DN 62-12, at ¶ 2; DN 62-11.) Frankenmuth's current counsel consulted with Moore-Roberson regarding the issues in this litigation in order to draft an answer to the Amended Complaint and the amended reservation of rights letter. (DN 62, at PageID # 1371; DN 62-12, at ¶¶ 6-9, 12-13.) Moore-Roberson did not send her initial report until August 24, 2020, and had not

4

verbally communicated any opinions to Frankenmuth before that date. (DN 62, at PageID # 1375; DN 62-1, at ¶¶ 7-8.) Frankenmuth emphasized that "all steps taken by Ms. Butts, including retention of Moore-Roberson and instructions to Moore-Roberson were directed by legal counsel." (DN 62, at PageID # 1375; DN 62-7, at PageID # 1485.)

On August 16, 2021, MV Louisville subpoenaed Moore-Roberson to appear for a deposition and bring various documents listed in an exhibit to the subpoena that included her "entire working files, paper and electronic, regarding MV Louisville or the Claim" "made by MV Louisville for damages related to hail from the storm event of July 20, 2018." (DN 56-3, at PageID # 656; DN 62-1.) Frankenmuth objected to the subpoena on grounds that Moore-Roberson is a consulting expert pursuant to Fed. R. Civ. P. 26(b)(4) and as such, her observations and opinions are not discoverable. (DN 56-1, at PageID # 505.) After the Parties were unable to reach a resolution either on their own or with the assistance of the undersigned (DN 55), MV Louisville filed the instant motion. (DN 56.)

      **B.**      **The Motion to Compel (DN 56) and Counter-Motion to Quash (DN 62)**

MV Louisville moved to compel Moore-Roberson's deposition and production of the documents requested in its subpoena. (DN 56.) In support, it argued that Moore-Roberson has relevant information regarding the date of loss and Frankenmuth's ability to determine the same, which Frankenmuth placed at issue by asserting its prompt notice defense in this litigation. (DN 56-1, at PageID # 505, 509-10.) It argued that Moore-Roberson cannot be considered a consulting expert because Frankenmuth retained her and she conducted an inspection in the ordinary course of Frankenmuth's business, not in anticipation of litigation. (*Id.* at PageID # 511-13.) In the alternative, it argued that even if Moore-Roberson is found to be a consulting expert, it had demonstrated the necessary exceptional circumstances to take her deposition and receive the

5

requested documents given that Frankenmuth put her testimony at issue with its prompt notice defense. (*Id.* at 513-14.) MV Louisville also argued that if the Court found the consulting expert privilege applied, the Court should preclude Frankenmuth from asserting its notice defense on principles of equity. (*Id.* at 514-15.)

In response, Frankenmuth argued that Moore-Roberson was in fact its consulting expert because litigation was both anticipated and had been instigated prior to Moore-Roberson preparing her report. (DN 62, at PageID # 1376-80.) It argued that MV Louisville had not shown that exceptional circumstances existed because MV Louisville's own expert witnessed everything witnessed by Moore-Roberson. (*Id.* at 1380-85.) It also argued that in addition to being a consulting expert, Moore-Roberson's investigation was covered by the attorney-client privilege because her opinions were solicited "for the purpose of facilitating the rendition of legal services to Frankenmuth." (*Id.* at 1375, 1374-76.) Further, it argued that MV Louisville's request to exclude Frankenmuth's notice defense was improper. (*Id.* at 1385-87.) Thus, it requested the Court quash the subpoena to Moore-Roberson. (*Id.* at 1365.)

In its reply, MV Louisville argued that the attorney-client privilege did not apply to Moore-Roberson's observations and opinions. (DN 71, at PageID # 1671-73.) It also reiterated its arguments regarding whether Moore-Roberson was a consulting expert and exceptional circumstances exception. (*Id.* at 1673-78.) Finally, as to its request regarding Frankenmuth's prompt notice defense, it stated,

> While MV Louisville agrees that the exclusion of a prompt notice defense as a matter of law is premature, MV raised the issue to point out Frankenmuth's intentions in asserting prejudice while refusing to provide Moore-Roberson for a deposition, hiding her observations and opinions regarding the damage to the property at issue.

(*Id.* at 1678.) Given MV Louisville's concession, the Court will construe the same as a withdrawal of its request regarding Frankenmuth's prompt notice defense and will not address the issue further herein.

## II.   DISCUSSION

### A.   Legal Standard

Fed. R. Civ. P. 26(b) governs the scope of discovery. Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). However, either on motion or on its own, the Court must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another "more convenient, less burdensome, or less expensive" source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Fed. R. Civ. P. 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

Fed. R. Civ. P. 45 allows parties, inter alia, to command a nonparty to appear at a certain time and place to testify or produce documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). Where

an objection has been asserted, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Conversely, on a timely, motion, the Court must quash any subpoena that imposes an undue burden or expense on the person subject to the subpoena, fails to allow reasonable time to comply, requires compliance beyond the geographic limits of Rule 45, or requires disclosure of "privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(1), (d)(3)(A).

### B.     Analysis

The Parties dispute whether Moore-Roberson is Frankenmuth's consulting expert. Fed. R. Civ. P. 26(b)(4) governs the scope of expert witness discovery and distinguishes between "testifying" experts, whose opinions will be presented at trial, and "consulting" experts employed solely for trial preparation. Fed. R. Civ. P. 26(b)(4). While testifying experts may be deposed by any party, parties are generally not entitled to discovery from consulting experts. Fed. R. Civ. P. 26(b)(4)(D). Discovery from consulting experts is only permitted in two limited contexts: as provided in Fed. R. Civ. P. 35(b) regarding physical and mental examinations and "on [a] showing [of] exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." *Id.* To make the latter showing, a party must show that "the party cannot obtain equivalent information from another source." *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 189 (M.D. Tenn. 2014) (quoting *Precision of New Hampton, Inc. v. Tri Component Products Corp.*, No, C12-2020, 2013 WL 2444047, at *3 (N.D. Iowa June 5, 2013)). Because Fed. R. Civ. P. 26(b)(4)(D) is an extension of the work product doctrine, *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012), to show that an individual is a consulting expert, a party must demonstrate that it consulted with the expert at issue "(1) 'because

of" a subjective belief there was a prospect of litigation; and (2) the[ ] belief was objectively reasonable." *In re OGGUSA, Inc.*, 20-50133, 2021 WL 2188927, at *4 (Bankr. E.D. Ky. May 28, 2021) (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). As with the work product doctrine generally, "an ordinary business purpose" does not suffice. *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009); *see also Roxworthy*, 457 F.3d at 593 ("It is clear that documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, are not covered by the work product privilege."). Thus, the first issue for the Court's consideration is whether Frankenmuth consulted with Moore-Roberson "because of" a subjective belief that there was a prospect of litigation and whether that belief was objectively reasonable.

Here, the Court concedes that the determination is a close one. Frankenmuth established that Moore-Roberson was retained on June 5, 2020, based on the advice of coverage counsel, who had previously been retained contemporaneously with Frankenmuth's May 12, 2020, receipt of MV Louisville's claim. (DN 62, at PageID # 1375; DN 62-12, at ¶¶ 3-4, 15.) Butts testified at her deposition that upon receipt of MV Louisville's claim she immediately contacted coverage counsel because of issues with the claim such as the Assignment, the loss date, and "the length of time prior to the claim having been reported." (DN 62-7, at PageID # 1464.) Butts did not specifically reference prospective litigation in her testimony, nor did the May 10, 2020, letter from MV Louisville's counsel putting Frankenmuth on notice of the loss explicitly reference or threaten litigation. (DN 62-5.) The letter instead merely served as notification of MV Louisville's claim. (*Id.*) The letter did direct Frankenmuth to "direct all communications on this claim to [the] attention" of counsel because MV Louisville requested that its counsel "assist with the handling and presentation of the claim." (*Id.*) This preference for communication to filter through counsel

9

is also expressed in a May 21, 2020, e-mail between MV Louisville's counsel and Butts. (DN 62-8, at PageID # 1490.) However, other e-mail communications between MV Louisville's counsel and Butts in the period prior to June 5, 2020, include the following

> June 2, 2020, 5:39 PM E-mail from Butts to MV Louisville's Counsel:
> Yes, I am checking with our coverage attorney who is preparing the letter.
>
> June 2, 2020, 8:26 PM E-mail from MV Louisville's Counsel to Butts:
> Ok – should we expect something this week? I expected you guys would at least inspect before sending a reservation of rights letter? Looking forward to talking with you.
>
> June 2, 2020, 7:48 PM E-mail from Butts to MV Louisville's Counsel:
> Inspecting without a Reservation of Rights could create estoppel. I should have the letter tomorrow. The reported loss date is in 2018. I can inspect any day, next week.

(DN 62-8, at PageID # 1489-90.)[4] Moore-Roberson inspected the Subject Property on June 9 and 15, 2020. (DN 56-1, at Page ID # 503; DN 56-2; DN 62, at PageID # 1369.) Frankenmuth's representatives did not speak to Moore-Roberson after the inspection until August 23-24, 2020, and Moore-Roberson did not tender her report until *after* MV Louisville had already filed suit. (DN 62, at PageID # 1370-71, 1375; DN 62-12, at ¶¶ 6-8.)

On these facts, the Court finds that Frankenmuth has failed to demonstrate that Moore-Roberson was initially hired *because of* an objectively reasonable subjective anticipation of litigation. The Sixth Circuit has previously recognized in the context of the work product doctrine that for insurance companies, "[m]aking coverage decisions is part of the ordinary business of insurance," and thus, if documents were prepared to assist in deciding coverage, then they are not protected by the work product doctrine. *In re Pros.*, 578 F.3d at 439. But the Sixth Circuit also emphasized that "whether [ ] documents . . . were in fact prepared in anticipation of litigation can

---

[4] Given the way the e-mails appeared in the tendered exhibit, the Court presumes that though Butts's June 2 e-mail referencing estoppel is time-stamped 7:48 PM, that e-mail originated in a different time zone than MV Louisville's counsel's 8:26 PM e-mail to which Butts appears to have been responding.

only be determined from an examination of the documents themselves and the context in which they were prepared." *Id.* Here, while the cumulative facts suggest that Frankenmuth could have had an objectively reasonable subjective anticipation of litigation, no facts tie Frankenmuth's initial retention of Moore-Roberson to anticipated litigation. Unlike in some of the cases cited by the Parties, there was no correspondence or other events that particularly referenced litigation as opposed to Frankenmuth's general need to determine the applicability of coverage. For example, the letter from MV Louisville's counsel putting Frankenmuth on notice of its claim referenced only claims, not litigation. *See Wells v. Howard Berger Company, Inc.*, 5:12-CV-190-WOB-REW, 2014 WL 12649007, at *3 (E.D. Ky. Feb. 7, 2014) (noting that consulting expert was retained based on letter from plaintiff's counsel referencing defective product that caused a death, which the court construed as "notification of likely litigation"). Instead, Frankenmuth was concerned with determining the existence of coverage in accordance with its ordinary course of business at the time it retained Moore-Roberson. In particular, the Court does not find either the mere retention of coverage counsel or MV Louisville's request that communications regarding its claim come to counsel dispositive of whether Moore-Roberson was retained because of litigation. While it is true that Frankenmuth could have hired Moore-Roberson to both assist with coverage issues and prepare defenses for litigation, it did not produce sufficient evidence that it had done so as of the time of her retention and her inspection of the Subject Property. However, Frankenmuth did demonstrate that the purpose of Moore-Roberson's retention had shifted as of the date MV Louisville filed suit on July 17, 2020. Based on the affidavit submitted by Frankenmuth's counsel, Frankenmuth relied on Moore-Roberson's opinions and observations in drafting its answer and supplemental reservation of rights letter and in developing its defenses in this action. Moore-Roberson's formal opinion was not sent to Frankenmuth until after suit had already been filed.

11

Thus, the Court finds that Moore-Roberson was Frankenmuth's consulting expert as of July 17, 2020.

MV Louisville argued that even if Moore-Roberson was a consulting expert, it had shown exceptional circumstances justifying her deposition and production of the requested documents. The Court disagrees. As noted above, to show exceptional circumstances, a party must show that "the party cannot obtain equivalent information from another source." *Genesco,* 302 F.R.D. at 189 (quoting *Precision*, 2013 WL 2444047, at *3). MV Louisville argued that Frankenmuth's notice defense put its knowledge at issue in this litigation. (DN 56-1, at PageID # 513.) But MV Louisville's argument misconstrues the true nature of Frankenmuth's notice defense. In its answer, Frankenmuth stated, "The Plaintiff failed to provide prompt or reasonable notice of the asserted property damage claim and the Defendant relies upon the lack of prompt and/or reasonable notice as a complete and/or partial bar to the Plaintiff's recovery herein." (DN 8, at PageID # 39 (eighth defense).) In its initial reservation of rights letter, it phrased this defense as "whether Frankenmuth Insurance has been prejudiced by late reporting of the claim." (DN 62-9, at PageID # 1491.) In its supplemental reservation of rights letter, it clarified that had MV Louisville provided notice of its claim at an earlier date, "Frankenmuth would have likely been able to determine whether the now asserted hail damage occurred seven (7) months prior as opposed to twenty-two (22) months prior." (DN 62-11, at PageID # 1496.) While MV Louisville phrases the issue in terms of what Frankenmuth knew or believed about the hail damage at the time of the inspection, the true issue inherent in Frankenmuth's notice defense and the prejudice to Frankenmuth is not what it knew or believed but what it could have determined or believed about the condition of the roof at various relevant times. This question ultimately relates to the condition of the roof during the relevant inspection and what conclusions could be drawn from the same, not necessarily what conclusions

12

Frankenmuth did draw. MV Louisville's own expert inspected the roof at the same time as Moore-Roberson and thus its own expert had equal access to the condition of the roof as of the date of the inspection. MV Louisville can be advised by its own expert about what conclusions could or could not be drawn from that condition; thus, Moore-Roberson's opinion is not the only way for MV Louisville to obtain the information it seeks. Once MV Louisville purchased the Subject Property, its representatives could have inspected the roof at any time. It did not need to wait to obtain this information from Moore-Roberson. Accordingly, MV Louisville can now or could have previously gotten the information it now seeks from a source besides Moore-Roberson, and exceptional circumstances do not exist in this case. *See South Fifth Towers, LLC v. Aspen Insurance UK, LTD*, 3:15-CV-151-CRS, 2016 WL 11200223, at *7-8 (W.D. Ky. Aug. 11, 2016) (relying on party's access to its own property and presence of a party's own expert during an inspection to find that exceptional circumstances did not exist), *objections overruled*, 3:15-CV-00151-CRS, 2016 WL 6594082 (W.D. Ky. Nov. 4, 2016); *Wells*, 2014 WL 12649007, at *3 (relying on presence of party's own experts during inspection to find that exceptional circumstances did not exist).

The admissions MV Louisville seems to be seeking from Moore-Roberson are exactly the type of information the rules prohibiting discovery from consulting experts was designed to insulate. As one court explained of the distinction between the rules regarding obtaining discovery from testifying and non-testifying experts, "[t]he purpose of Rule 26(b)(4)(A) is to ensure that parties can properly prepare for cross-examination of expert witness at trial. Rule 26(b)(4)(B), meanwhile, is intended to prevent the unfairness of allowing one party to benefit from the opposing party's trial preparation." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 899, 904 (N.D. Ohio 2009), *aff'd*, 606 F.3d 262 (6th Cir. 2010) (citations omitted). "A party must as a

13

practical matter prepare his own case in advance of that time, for he can hardly hope to build his case out of his opponent's experts." Fed. R. Civ. P. 26(b)(4) advisory committee's note to 1970 amendments. Because in the Sixth Circuit, a party may not call another party's expert as a witness,

> where an expert is non-testifying, there is no need to prepare for cross-examination of that expert. Thus, permitting the deposition of a non-testifying expert witness only can result in enabling a party to build his case on the back of the opposing party's retaining and financing an expert. This strikes at the heart of the fairness doctrine inherent in Rule 26(b)(4) and is precisely the reason why most courts demand that a party seeking to depose non-testifying experts show exceptional circumstances.

*R.C. Olmstead*, 657 F. Supp. 2d at 904. Here, permitting MV Louisville to obtain Moore-Roberson's opinions formed after the initiation of litigation would be the equivalent of allowing MV Louisville to build its case on Frankenmuth's defense efforts. MV Louisville's own expert, armed with facts about the condition of the roof to which he or she has equal access, can advise MV Louisville as to what conclusions Frankenmuth could have drawn from those facts at the time. Accordingly, the Court finds that MV Louisville has failed to demonstrate that exceptional circumstances exist justifying discovery from Moore-Roberson regarding facts and opinions after July 17, 2020. Given the Court's conclusion above regarding when Moore-Roberson became Frankenmuth's testifying expert, however, the Court will permit Moore-Roberson to be deposed regarding what she observed as to the condition of the roof during her inspection. However, because her opinion was formalized after suit was filed and the purpose of her retention had shifted, Moore-Roberson will not be required to testify regarding any opinions she formed based on those facts.

As to MV Louisville's subpoena duces tecum, no privilege log was provided for the Court's review to enable it to assess the applicability of the various protections claimed by Frankenmuth to particular documents. Thus, the Court does not reach Frankenmuth's arguments regarding the

14

applicability of the attorney-client privilege and/or the work product doctrine. The Court will direct Frankenmuth to serve a privilege log as to any documents created prior to MV Louisville filing suit falling within the scope of MV Louisville's subpoena. Should any disputes regarding documents identified on the privilege log persist after MV Louisville's review of the privilege log, the Parties may bring this matter to the Court's attention as set forth below.

### III.  CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED as follows:

(1) MV Louisville's Motion to Compel (DN 56) and Frankenmuth's Counter-Motion to Quash (DN 62) are both **GRANTED IN PART** and **DENIED IN PART** as set forth herein. Specifically,

    (a) MV Louisville may depose Moore-Roberson regarding her observations of the condition of the roof during the June 9 and 15, 2020, inspections. MV Louisville may not question Moore-Roberson regarding any opinions she formed based on those facts.

    (b) On or before **October 3, 2022**, Frankenmuth shall serve a privilege log identifying any documents responsive to MV Louisville's subpoena duces tecum dated prior to July 17, 2020, and the applicable protection Frankenmuth invokes as to those documents.

    (c) Should a dispute remain between the Parties regarding the subpoena and the privilege log, the Parties should contact the Court to schedule a telephonic status conference to discuss next steps and a potential *in camera* review.

(2) The Parties' Joint Motion to Place Deadlines in Abeyance (DN 75) is **DENIED** as moot given that the instant memorandum opinion and order addresses all remaining pending motions.

(3) Frankenmuth's Motion to Remand Jury Trial Date (DN 76) is **GRANTED**, and the current pretrial conference, pretrial deadlines, and trial date are **REMANDED**.

(4) On or before **September 23, 2022**, the Parties shall confer and submit a joint proposed amended scheduling order that includes proposed dates on which they and their respective decisionmakers[5] are available for a settlement conference with the undersigned.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

September 12, 2022

---

[5] The Court's Order for Settlement Conference defines who the Court considers an appropriate decisionmaker, and the Parties are directed to the provisions of the previous settlement conference order entered in this case (DN 60) to the extent they have questions about who their decisionmakers are.